IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| EDI PRECAST, LLC, | CASE NO. 3:12-cv-00012 |
| *Plaintiff,* | |
| v. | MEMORANDUM OPINION |
| MID-ATLANTIC PRECAST, LLC, | |
| *Defendant.* | JUDGE NORMAN K. MOON |

This matter is before the Court on a motion for default judgment filed by Plaintiff EDI Precast, LLC ("EDI"). On March 16, 2012, EDI filed its complaint against Defendant Mid-Atlantic Precast, LLC ("Mid-Atlantic") for breach of contract and, in the alternative, quantum meruit. On March 23, 2012, I issued a show cause order requiring EDI to file an amended complaint properly identifying the citizenship of the parties' members.[1] Before EDI filed its amended complaint, copies of a summons,[2] the original complaint, and related documents were served on Mid-Atlantic's registered agent on March 27, 2012. Thereafter, on April 10, 2012, EDI timely filed its amended complaint and served a copy by mail to Mid-Atlantic's registered agent. Consequently, Mid-Atlantic's response to EDI's amended complaint was due on or before April 27, 2012. *See* Fed. R. Civ. P. 15(a)(3); Fed. R. Civ. P. 6(d). By May 15, 2012, no

---

[1] For purposes of diversity jurisdiction, a limited liability company is assigned the citizenship of all of its members. *Gen. Tech. Applications, Inc. v. Exro Ltda*, 388 F.3d 114, 120 (4th Cir. 2004); *see also Carden v. Arkoma Assocs.*, 494 U.S. 185, 195–96 (1990) (stating the "oft-repeated rule" that, with the exception of a corporation, an artificial entity's citizenship for diversity purposes is the citizenship of "each of its members") (citations omitted). EDI is a limited liability company whose members are citizens of Maryland, and Mid-Atlantic is a limited liability company whose members are allegedly citizens of Virginia and Tennessee. Accordingly, the citizenship of the parties is completely diverse, thus allowing the Court to exercise jurisdiction over the instant matter. *See* 28 U.S.C. § 1332.

[2] The summons warned Mid-Atlantic that if it did not respond to the complaint's allegations within twenty-one days, judgment by default would be entered against it for the relief demanded by EDI in the complaint.

response had been filed, and so EDI moved the Court for entry of default judgment against Mid-Atlantic. After failing to appear, plead, or otherwise defend against the action, Mid-Atlantic's default was entered by the Clerk of the Court on May 30, 2012. A certified copy of the Clerk's entry of default was mailed to Mid-Atlantic. To date, Mid-Atlantic has still not entered an appearance in this matter. For the reasons that follow, I will grant EDI's motion for default judgment.

## I. BACKGROUND

As alleged in the amended complaint, the facts of this case are as follows. On October 1, 2010, Mid-Atlantic, which provides construction services as a general contractor, entered into a subcontract with EDI, which supplies precast concrete erection and installation services. The subcontract covered concrete work for a project known as the Boss Instruments – Summerfield Business Park located in Louisa, Virginia. In exchange for EDI's erection of approximately 15,800 square feet of precast concrete panels, Mid-Atlantic agreed to pay $57,200.00, subject to any additions or deductions in the form of work order changes.

According to EDI, it completed the job outlined in the subcontract, as well as additional work that was beyond the scope of the subcontract but which Mid-Atlantic accepted and oversaw. EDI contends that this additional work, for which Mid-Atlantic fully understood it had to pay, totaled $50,987.11 above the aforementioned subcontract price. Because Mid-Atlantic has not paid EDI to date, EDI claims that Mid-Atlantic breached its obligations under the subcontract and has been unjustly enriched as a result. All told, EDI maintains that it has suffered damages in the amount of $108,187.11.

## II. LEGAL STANDARD

"Rule 55 of the Federal Rules of Civil Procedure authorizes the entry of a default judgment when a defendant fails 'to plead or otherwise defend' in accordance with the Rules." *United States v. Moradi*, 673 F.2d 725, 727 (4th Cir. 1982). The Clerk of the Court's interlocutory entry of default pursuant to Federal Rule of Civil Procedure 55(a) provides notice to the defaulting party prior to the entry of default judgment by the court. *Carbon Fuel Co. v. USX Corp.*, 1998 WL 480809, at *2 (4th Cir. Aug. 6, 1998). After the entry of default, the non-defaulting party may move the court for default judgment under Rule 55(b) of the Federal Rules of Civil Procedure. *Id*. "If the plaintiff's claim is for a sum certain or a sum that can be made certain by computation, the clerk—on the plaintiff's request, with an affidavit showing the amount due—must enter judgment for that amount and costs against a defendant who has been defaulted for not appearing . . . ." Fed. R. Civ. P. 55(b)(1). However, when the sum is not certain, default judgment can only be made by the court. Fed. R. Civ. P. 55(b)(2); *Agri-Supply Co. v. Agrisupply.com*, 457 F. Supp. 2d 660, 662 (E.D. Va. 2006).

Upon default, the plaintiff's factual allegations are accepted as true for all purposes, excluding the determination of damages. *See Ryan v. Homecomings Fin. Network,* 253 F.3d 778, 780 (4th Cir. 2001) (citations omitted); *see also* Fed. R. Civ. P. 8(b)(6) ("An allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied."). Although the clear policy of the Federal Rules of Civil Procedure is to encourage dispositions of claims on their merits, the entry of default judgment is committed to the discretion of the trial court. *See Moradi*, 673 F.2d at 727 (citing *Reizakis v. Loy*, 490 F.2d 1132, 1135 (4th Cir. 1974)). In reviewing motions for default judgment, courts have referred to the following factors:

3

> (1) whether there is a large amount of money involved in the litigation; (2) whether there are material issues of fact in the case needing resolution; (3) whether the case involves issues of great public importance; (4) whether the grounds for the motion for a default judgment are highly technical; (5) whether the party asking for a default judgment has been prejudiced by the non-moving party's actions or omissions; (6) whether the actions or omissions giving rise to the motion for a default judgment are the result of a good-faith mistake on the part of the non-moving party; (7) whether the actions or omissions giving rise to the motion for a default judgment are the result of excusable neglect on the part of the non-moving party; and (8) whether the grounds offered for the entry of a default judgment are clearly established.

*Faulknier v. Heritage Fin. Corp.*, 1991 U.S. Dist. LEXIS 15748, at *11–12 (W.D. Va. May 20, 1991) (citing 10 C. Wright, A. Miller & M. Kane, Federal Practice and Procedure §§ 2684–85 (1990)).

### III. DISCUSSION

As I previously described, Mid-Atlantic has completely failed to participate in this litigation. The grounds offered by EDI for the entry of default judgment are clearly established, and Mid-Atlantic's failure to defend this action does not appear to be the result of excusable neglect or any good-faith mistake on its part. Further, the grounds for EDI's motion are not highly technical. Although the amount of money involved in this litigation is by no means inconsequential, it is certainly not so large as to be remarkable. Because of these factors, and in light of Mid-Atlantic's disregard of EDI's claims, default judgment in EDI's favor is warranted. Accordingly, I proceed to an analysis of EDI's entitlement to the relief it seeks.

#### A. Damages

It is well-established that federal courts sitting in diversity apply the substantive law of the forum state, including the forum state's choice of law rules. *See Salve Regina Coll. v. Russell*, 499 U.S. 225, 226 (1991) (citing *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938)). In

4

Virginia, "the law of the place of performance governs questions arising in connection with the performance of a contract." *Equitable Trust Co. v. Bratwursthaus Mgmt. Corp.*, 514 F.2d 565, 567 (4th Cir. 1975) (citing *Arkla Lumber & Mfg. Co. v. W. Va. Timber Co.*, 132 S.E. 840, 842 (Va. 1926)). Accordingly, in the case at hand, Virginia's law on breach of contract and quantum meruit applies.

In support of its motion for default judgment, EDI submits the affidavit of its president, Thomas Nicholson, Jr. Attached as an exhibit to Mr. Nicholson's affidavit is the subcontract into which EDI and Mid-Atlantic entered. The subcontract describes the work that EDI was to perform, and states that Mid-Atlantic would pay $57,200.00 upon its completion, "subject to any additions or deductions for any change order that may be agreed upon and approved in writing by [Mid-Atlantic]'s Project Manager . . . ." In his affidavit, Mr. Nicholson attests that EDI completed the work described in the subcontract, as well as other work under the direction of Mid-Atlantic, but he claims that Mid-Atlantic has refused to compensate EDI accordingly. Mr. Nicholson further attests that the unpaid subcontract balance totals $57,200.00, and that the costs incurred by EDI for the additional labor performed at Mid-Atlantic's request totals $50,987.11. Attached as an exhibit to Mr. Nicholson's affidavit is a final statement, issued to Mid-Atlantic on June 8, 2011, which lists the work performed by EDI from October 8, 2010 through December 22, 2010. The final statement includes invoice numbers, cost categories, and corresponding dollar amounts.[3] The total amount owed is listed as $108,187.11.

Under Virginia law, the elements of a cause of action for breach of contract are: "(1) a legally enforceable obligation of a defendant to a plaintiff; (2) the defendant's violation or breach of that obligation; and (3) injury or damage to the plaintiff caused by the breach of obligation."

---

[3] Copies of the individual invoices, as well as a multitude of receipts substantiating their amounts, are also attached as exhibits to Mr. Nicholson's affidavit.

*Filak v. George*, 594 S.E.2d 610, 614 (Va. 2004) (citations omitted). Here, EDI has submitted evidence of Mid-Atlantic's obligation in the form of the subcontract, and EDI has alleged that Mid-Atlantic failed to pay it for performance of the work outlined therein. Further, EDI has offered ample evidence to support an award of damages for Mid-Atlantic's breach. Thus, I find that, based on the facts alleged in the amended complaint, and in light of Mr. Nicholson's detailed affidavit, Mid-Atlantic breached its subcontract with EDI. Accordingly, EDI is entitled to $57,200.00 in damages.

Separately, EDI seeks damages for the additional work it performed on the jobsite, the possible performance of which the parties clearly contemplated in the subcontract. Presumably because it has not offered evidence of Mid-Atlantic's project manager's written approval of this supplementary work, EDI does not request this additional award of damages under a breach of contract cause of action. Rather, EDI seeks damages for the additional work performed under a quantum meruit cause of action, which, at bottom, is premised on one party's unjust enrichment at the expense of another party. *See Kern v. Freed Co.*, 299 S.E.2d 363, 365 (Va. 1983). Under Virginia law, the elements of a claim for quantum meruit are:

> (1) a benefit conferred on the defendant by the plaintiff; (2) knowledge on the part of the defendant of the conferring of the benefit; and (3) acceptance or retention of the benefit by the defendant in circumstances that render it inequitable for the defendant to retain the benefit without paying for its value.

*MP Leasing Corp. v. Colonna's Shipyard*, No. 2:07cv273, 2009 WL 2581575, at *4 (E.D. Va. May 8, 2009) (citations omitted). In the case at hand, each of these elements appears to have been satisfied. EDI conferred a benefit on Mid-Atlantic by performing extra work beyond the scope of the subcontract. Further, this work could not have escaped Mid-Atlantic's knowledge, for its performance was undoubtedly obvious. Finally, it would be inequitable to permit Mid-Atlantic to retain the benefits of EDI's additional concrete erection work without requiring it to

6

compensate EDI. Therefore, I find that, under the theory of quantum meruit, EDI is entitled to the additional $50,987.11 it expended to complete its portion of the project.

Ultimately, I find that EDI is entitled to $108,187.11 in the form of damages, plus post-judgement interest at the legal rate in accordance with 28 U.S.C. § 1961.

### B. Costs and Attorney's Fees

In the instant case, EDI seeks an award of $704.61 for the costs it has incurred in the pursuit of this action. "Unless a federal statute, [the Federal Rules of Civil Procedure], or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party." Fed. R. Civ. P. 54(d)(1); *see also Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 766 (4th Cir. 2003) ("Rule 54(d)(1) creates a presumption that costs are to be awarded to the prevailing party . . . ."). Because the costs for which EDI requests reimbursement are taxable, EDI may file a Bill of Costs with the Clerk of the Court pursuant to 28 U.S.C. § 1920.

With respect to attorney's fees, it is well-established that "each party in a lawsuit ordinarily shall bear its own attorney's fees unless there is express statutory authorization to the contrary." *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983). EDI has offered no statutory basis for an award of attorneys' fees, and, I add, it has not fully complied with all of the relevant dictates embodied within this Court's local rules. *See* W.D. Va. Civ. R. 54. Accordingly, I decline to award EDI attorney's fees in connection with this matter.

### IV. CONCLUSION

For the foregoing reasons, EDI's motion for default judgment shall be granted. An order will be entered awarding EDI damages in the amount of $108,187.11 from Mid-Atlantic, which shall bear post-judgment interest at the legal rate until the judgment is fully paid.

7

The Clerk of the Court is hereby directed to send a certified copy of this memorandum opinion and the accompanying order to all counsel of record. Additionally, to the extent that it is possible, the Clerk of the Court is hereby directed to send certified copies of these documents to Mid-Atlantic.

Entered this __20th__ day of June, 2012.

_____
NORMAN K. MOON
UNITED STATES DISTRICT JUDGE